[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15203
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20441-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ORLANDO OLVER BUSTABAD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 6, 2018)

Before MARCUS, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Orlando Olver Bustabad appeals his 168-month sentence after he pleaded

guilty to one count of conspiracy to commit healthcare and wire fraud, in violation

of 18 U.S.C. § 1349.  On appeal, he argues that the district court clearly erred by

imposing a 2-level enhancement for use of "sophisticated means," U.S.S.G. § 2B1.1(b)(10)(C), during the commission or concealment of the offense.  After thorough review, we affirm.

A district court's finding that the defendant used sophisticated means is a finding of fact reviewed for clear error.  United States v. Barrington, 648 F.3d 1178, 1199 (11th Cir. 2011).  Review for clear error is deferential, and we will not disturb a district court's findings unless we are left with the definite and firm conviction that a mistake was committed.  United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010).  An error that does not affect the sentence imposed is harmless.  United States v. Lozano, 490 F.3d 1317, 1324 (11th Cir. 2007).

The Guidelines provide for a two-level enhancement if an offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means."  U.S.S.G. § 2B1.1(b)(10)(C).  The commentary to § 2B1.1 defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1, comment. (n.9(B)) (2016).  Conduct such as hiding assets or transactions "through the use of fictitious entities, corporate shells, or offshore financial accounts" ordinarily indicates sophisticated means. Id.  There is no requirement that each of a defendant's individual actions be sophisticated. Ghertler, 605 F.3d at 1267.  Rather, it is sufficient if the totality of the scheme was

sophisticated. Id. In looking at the totality of the scheme to determine its sophistication, the court may consider the number of distinct and repetitive acts that the defendant undertook throughout the scheme, the length of the scheme, and the loss inflicted by it. United States v. Feaster, 798 F.3d 1374, 1381 (2015).

In United States v. Campbell, a tax evasion case involving the nearly identical § 2T1.1(b)(2), defendant Campbell, the former mayor of Atlanta, used campaign accounts and credit cards issued to others in order to conceal cash expenses and the extent of his tax fraud. 491 F.3d 1306, 1309, 1315 (11th Cir. 2007). We upheld the district court's finding of sophisticated means, explaining that using "a straw man or campaign fund" was no different than hiding assets or transactions through shell corporations or offshore accounts. Id. at 1316.

Here, the district court did not clearly err in finding that, in perpetrating a healthcare and wire fraud scheme, Bustabad intentionally engaged in conduct that constituted sophisticated means. See U.S.S.G. § 2B1.1(b)(10)(C). As the record reveals, Bustabad, his father, and their coconspirators performed numerous different and repetitive acts in order to perpetrate the fraud. See Feaster, 798 F.3d at 1381. For starters, Bustabad and his father used nominee owners to hide their ownership of nine of pharmacies. The nominee owners incorporated the pharmacies and opened bank accounts in their names to receive payments from Medicare, which concealed Bustabad's and his father's identities. See Campbell,

3

491 F.3d at 1316.  Bustabad and his father collected and provided compromised Medicare beneficiary data and compromised doctor identification information to submit fraudulent claims.  Medicare then paid the claims to the pharmacies and the nominee owners withdrew the funds via checks, cash counter withdrawals at banks, or check cashing for themselves, Bustabad, and his father.  The total scheme lasted 4 years and it caused an intended loss of $10,678,160 and an actual loss of $4,857,235.  See Feaster, 798 F.3d at 1381.  On this record, as the district court explained, the sophisticated-means enhancement was warranted based on the number of people involved in the scheme, the length of the scheme, the quickness with which the nominee owners could get in and out of the corporations they set up, and the intent to cause over $10 million in loss.

Moreover, the district court twice explained during the sentencing hearing of Bustabad and his conconspirators that, even if the sophisticated-means enhancement did not apply, it would impose the same sentence.  Thus, even if there was error in applying the enhancement, the error was harmless.  See Lozano, 490 F.3d at 1324.  Accordingly, we affirm.

**AFFIRMED**.